This court is now in session. Please be seated. Would the clerk call the next case please? Brandon Larvelle-Groves Jackson, executed by Marsha Morris. Oh yeah, sorry. There's an error. I'm sorry. No, you're fine. You're right. Yeah, you go, Sebastian. Just one minute. I want to tell you that Justice Brennan is also going to be on this panel. He is ill today, but he's able to join us by Zoom. So when you come up and give your argument, you might want to not ignore him. I would never do that. Okay. So yes, you may approach. Thank you so much. Good afternoon, Justices. My name is Marsha Morris. I represent Brandon Groves. This is a unique case because it's a constitutional argument, in effect. The core issue of this case is not that the trial court abused its discretion in denying Brandon Groves his 14th Amendment constitutional right to secure discovery to prepare his case for hearing. The issue is that the trial court had the unbridled discretion under the act to deny him that right. That's the core issue. The theory of our case is actually based upon Bruin, the Supreme Court case, oddly enough, the gun case. Bruin set forth certain prerequisites for what makes an act unconstitutional. It seems that the main issue in Bruin, as well as here, is that the court, or they call themselves the tribunal, had the right to decide whether they would allow Mr. Groves to issue his discovery. We issue discovery because that's what you do when you try a case. You need to find out where your opponent is, what they know. So we did an entire suite of discovery pursuant to the Supreme Court rules. The trial court denied our right to have discovery based on motion from the state. Actually, it was the state's attorney from DuPage. That triggered us having to come to the appellate court and seek a decision to declare the act unconstitutional because we had no other alternative. In our notice of appeal, we set forth the issue of constitutionality, but that issue did not arise until we were denied our discovery request. At that point in time, then, the issue became on the forefront. Now, how do you get jurisdiction, or standing rather, to appeal a case on the issue of unconstitutionality? My favorite one is, I coined it, testing the waters to acquire standing. That means that a litigant must actually go and try to challenge the constitutionality of the act that he attempts to exercise his constitutional guaranteed rights. We cited a case, Jackson By versus Hanselmayer, to that effect. Once you do that, and you say that you're challenging this right, and the court denies you that right, then you have the right to appeal on the basis of it being unconstitutional. Incidentally, the discovery we sent out was 213, 214, and 216, of which we got back nothing, of course, because the court denied it. Now, why is this case similar to the federal case? In the act, I'm going to call it the act, if you don't mind, Justices, because it's called, and I have wrote it down, the Illinois Uniform Interstate Family Support Act. It says, under section 22-318, the word may. Not has to, not shall, it says may. But it doesn't say under what circumstances, or under what special circumstances, would the Illinois Tribunal act, or what they would require of the respondent himself to demonstrate, to compel the Illinois Tribunal to act on his behalf, and send out the requested discovery to the opposing, to the other referring tribunal. Which, for the record, there is no referring tribunal. It's a clerk sitting in Georgia who fills out a form and sends it down, a 311 form, sends it to Illinois, the Illinois people then send it to the state's attorney who files a complaint. And we in Illinois give this form the authority of court order. Well, there is no court order. It's a form. So I would like to just clarify that. Now, so the act is silent as to what defines the right for you to get discovery. Now, in any basic case, the Constitution, under the 14th Amendment, guarantees you the right to prepare your case, to have a fair day in court, an honest case, an honest tribunal that you will be tried for the case in front of. And you cannot do that without discovery. And there is case law that we cited in our briefs that sets forth the requirement that due process of law requires you, requires the court to allow you to do those things. If the act allows the court the discretion, unbridled discretion, because there is no guidelines in this act, the 318 section, it tells them nothing. They can do what they want, which sounds pretty shocking. Counsel, is it your position that any time a court has unbridled discretion to grant or not grant the discovery order, whatever act or provision authorizes that is unconstitutional? My position is this, Your Honor, is that in this case, which I'm focusing on, without the court allowing you to exercise your 14th Amendment rights to prepare for court, to prepare your case, to defend yourself in a court of law, yes, it's a violation of your constitutional rights. And if there are other cases or other acts that do that, that restrict your ability to prepare your case and come forward and argue it properly, yes, it is a violation of the Constitution. Before we would ever address the constitutionality of the statute along those lines, we would first determine whether we thought the trial court had abused its discretion. And this trial court denied the discovery request based upon what she thought were the relevant questions and the affidavits and documents regarding income, et cetera, that were available to the court. The court determined that we didn't need any more information. Is it really an abuse of discretion analysis rather than a constitutional analysis? I would agree it was an abuse of discretion, but I think when I was there, the court blatantly just said, no discovery, period. There was no discussion as to anything else that you could have. And in fact, the affidavits that we received were worthless because they were the same ones that they tendered two years ago. I would say if we look at Bren, the Supreme Court case, Your Honor, it defined all the attributes of what goes wrong and what makes an act unconstitutional. And in this case, the court can't argue that they're balancing the interest of children over the interest of your constitutional rights because there is no constitutional right to pay child support. That's a state interest. There is no special legislation that trumps a constitutional right. So I would say to you that this act violates the Constitution because it abuses your right to prepare for a trial. This act is passed in the same form in all 50 states, is that correct? I believe it is. Has any appellate or Supreme Court ever found any aspect of it unconstitutional? I cannot say that anybody has ever challenged it. This may be the first court that will have a good look at this act and say something is wrong here. And you are correct. It may cause a ripple effect, but maybe it needs to. Because, you know, we have a paternity act in Illinois. You're allowed to do discovery. You can argue about tax deductions. You can argue about seeing your child. And you have all these rights if you avail yourself to this act, I mean to the Illinois Paternity Act. But if you come in through the other act, as a father, you have no rights. You can't see your child. You can't even find out where your child is. You don't even know. But this act has nothing to do with visitation. You would agree with that, correct? I would say this, Judge. The act itself refers back to Illinois having jurisdiction. And it says it's consistent with Illinois law in the act. Illinois law gives you all these rights. So it's not consistent with Illinois law. It's inconsistent. And that's another issue that I've raised in here. But isn't the idea that if your client wants to address issues other than support, I mean, this is a sad reality when you have families that are separated by states. But go where the child's living. That's the state where you're going to address those issues. Isn't that the idea behind this, that this is just a support act? I'm going to answer that for this case, and then I'll go a little further. In this case, we actually sent a sheriff out to try and find this woman. Couldn't find her. My client had a private investigator look for her. Couldn't find her. We didn't know she's in Georgia. The point is, though, that we do know she's getting benefits from Georgia, right? We don't know where she's getting the benefits from. I'm assuming you may be right, Judge. But the point is that if you're going to come into our state and you're going to look, let's say you do the child support formula. Okay? The child support formula has provisions in it for a percent of time that you see the child, that the child spends time overnight with you. The tax deductions on that would be in effect. So, in effect, if you're saying that this act is just a collection act, that's wrong. I would say it's not a collection act. It's worse. It's an abuse of the fathers who can't find out anything and can't even prepare their case for hearing. If I can't go and I can't find out what she's really earning because they give me an affidavit, how am I supposed to know this is accurate? And it turns out if it's two years old, what is it accurate? I can't even determine what the costs are for this child because I got nothing. So if I ask the questions under the law, which I'd normally be able to do, in his case here, the court could say, well, I don't feel like it. We have a May, and May is not going to work for you today, counsel. That's the problem. It's discretionary. And that's what TKO-ed the state of New York in Brennan. That discretion that the court had to say, well, we don't really know what we want to allow you to get your permit, but we're going to say no anyways because the law doesn't tell us what we have to follow. So today maybe we just feel like we had a good day or a bad day. It doesn't matter. That's the problem with this act. This case is an identical case to that Supreme Court. And if you close your eyes a little bit, you can start to see the comparison between the two. I mean, the Supreme Court could have said to the state of New York, go ahead and give this man his permit. They didn't do it. They said something is wrong with this act, and you need to correct it. And that's why they did what they did. And Justice Thomas wrote an amazing opinion in which he covered everything from the arguments of special interest, et cetera. But he did give them an opening. He said, show us a tradition that allows you to do this. Well, the state didn't. You know, I wrote my briefs. I don't have anything about a tradition that says you can deny somebody the rights of discovery in Illinois. I defy the court to tell me there is a tradition of that. I mean, we here are sworn to protect the Constitution of the United States. And this flies in the face of it. So you could come back and order them to do that, but that doesn't solve the problem. The problem is the act itself is defective. And there are many more Brennans out, I'm sorry, many more Brandins out there who are stuck in the same position. Only my client and me came forward with it. But it's a good question, Judge. I'm sorry. I didn't realize I ran out of time, Justice. You could have taken a little bit more. Yeah, I talk too much. My wife says that. Do you have any questions, Judge? I do not. No, I don't think my question has to do with jurisdiction, how we have jurisdiction to hear this. You have jurisdiction because Mr. Groves filed a discovery request. And in so doing, the discovery request was denied. In effect, the court denied him his 14th Amendment rights to prepare for trial. That gives me the right to come into this court. I did cite a couple cases in there, Judge, that talk about it, that give you jurisdiction. One of the cases, Jackson By versus Hamelsmeyer, 115 Federal 3rd, 1091. It's a 1997 case that talks about the challenging of an act as unconstitutional. And basically, you have to go and test the act. You can't just come back and say, oh, it's unconstitutional. I'm going to file an appeal. You have to actually do something that triggers it, that enables the court to then deny you your constitutional right. And that gives you the jurisdiction, Judge. OK. Thank you. Thank you, Your Honor. I appreciate your patience. Thank you. You have five minutes for rebuttal. Thank you, Judge. Justice, sorry. That's fine. Ms. Lunder, good afternoon. Good afternoon. I'm Assistant Attorney General Laura Lunder on behalf of the Department of Health Care and Family Services. Council has made a number of assertions that we don't believe are correct. And largely, those assertions misunderstand the statutory framework, and they conflate the circuit court's ruling, denying his discovery requests with supposed requirements of the Uniform Interstate Family Support Act, UFSA. And they aren't requirements of that act. And I'll talk about some of those problems a bit more as time permits. Just one second. We lost Justice Brennan. There he is. Can you hear? Liam? I think his microphone's off. I can. OK. Could you speak up just a little bit? I'm having a little trouble hearing you. I apologize. Better? Yes. Thank you. But I think the fundamental issue here is the lack of appellate jurisdiction. And so I'd like to start by addressing that. There was a motion to dismiss that was taken with the case. The claim basis of jurisdiction is Rule 304A. And at counsel's urging, the circuit court did include in the order denying discovery a finding that the order was final and appealable under that rule. But merely including that finding doesn't create appellate jurisdiction because none of the requirements of the rule were met here. To have jurisdiction under Rule 304A, you still need a final judgment. Final judgment is to a party or a claim. And we don't have that here. What was going on in the circuit court was that the department filed a petition to modify the most recent child support order. And then the respondent filed three discovery requests in connection with the petition to modify. And ultimately, the circuit court denied those three particular discovery requests. But the petition to modify itself remains pending in the circuit court and has not yet been ruled on by the court. So this is an appeal from the denial of those particular discovery requests. And there's well-settled law that a discovery ruling is considered an interlocutory order. It's not a final judgment for purposes of appeal under Rule 304A. And that rule doesn't confer jurisdiction. No other Supreme Court rule confers jurisdiction. And so we believe the court should dismiss this appeal for lack of jurisdiction. And your point would also be that the constitutional issue is not anything that we look at. That is correct. Even if the court had jurisdiction, there would be no need to reach the constitutional issues. But certainly without jurisdiction, there is no reason to do that. And nothing that's been said or presented cures the fact that there is a jurisdictional defect because there is no final order as to a party or a claim. We think that's dispositive. But if the court determines that it does have jurisdiction here, then the only issue that is properly before the court is whether the circuit court abused its discretion in denying the three specific discovery requests that the respondent filed. And it didn't abuse its discretion because those discovery requests were excessive and overbroad or they were not appropriate to the petition to modify support. And I'll address the discovery that was filed. But I would like to clarify a point that the reason the abuse of discretion issue is the only proper issue here is because courts decide cases on non-constitutional grounds whenever that's possible. And the respondent tries to bring in various constitutional challenges. And there are multiple problems with those challenges. But an important consideration is that this matter can be, should be, fully resolved without reaching any constitutional issues. It makes sense to do that here because the constitutional claims are largely based on a misunderstanding of how UPSA and the related statutes work. With that, I think it's useful to look at the discovery request that he filed. And I believe the respondent's premise is that UPSA doesn't permit him any discovery. And that's incorrect. The respondent can seek discovery. It would be appropriate for the circuit court to allow reasonable discovery that relates to responding to the petition to modify child support. There's nothing in the statute that prevents that. The problem with the discovery that the respondent sought, as I say, is that it was either excessive and burdensome or unrelated to the support issues. There were a document request and interrogatories. And those were very wide-ranging. They sought over 20 categories of various types of information, mostly financial. The interrogatories were largely duplicative of the document request. And it wasn't an abusive discretion for the circuit court to deny those because they were burdensome, given the type of support calculations that are at issue here, which are relatively straightforward. The other discovery request that was filed was a request to admit facts. And that was a request for admission of about 20, more than 20 statements that related to the parenting relationship between the mother, the respondent, and the child. And it wasn't an abusive discretion for the circuit court to deny that request because it did not pertain to child support. The UPSA pertains only to child support. And under that statute, the circuit court did not have jurisdiction to address matters relating to the parenting issues. And as I explained in the brief, though, there is a different and complementary statute, the Uniform Child Custody Jurisdiction and Enforcement Act, I'll just call it the Custody Act, that does address parenting issues such as custody and visitation. And if the respondent wanted to pursue a parenting relationship with his daughter, then that statute provides the mechanism for him to do that. But that type of proceeding has to be initiated in the child's home state. The Illinois Circuit Court doesn't have the jurisdiction to consider parenting issues. And I think that a persistent through-line here is that counsel would prefer to have all of the support issues, as well as the parenting issues, addressed in Illinois, but that's not how the statutory framework works. And that doesn't indicate any constitutional flaw in the statutory framework. So if this court determines that it has jurisdiction, it should also find that the circuit court did not use its discretion in denying the discovery requests. There are a number of constitutional issues raised. As I say, I believe that the fundamental issue here is the lack of jurisdiction. If we get past that, the case should be resolved on non-constitutional grounds. But if the court were inclined to consider the constitutional issues, then there's no basis for declaring UFSA unconstitutional. There was a question asked about, are there any cases cited that have invalidated provisions of these statutes on similar grounds? There are none. There are no cases cited that have invalidated any sections of these statutes for any reason. The problems with this case include, I think at the very beginning, forfeiture, that none of this was presented to the circuit court. And, of course, statutes carry a strong presumption of constitutionality. And there's nothing presented here that would overcome that. In part, it seems to be a facial challenge, which, of course, is the most difficult. And the challenges here are largely based on misunderstanding of the statutory framework, as I've mentioned. I think two recurring threads here, two confusions, are this idea that UFSA would not allow any discovery. UFSA doesn't require or foreclose any particular discovery. It simply directs Illinois courts to utilize the relevant law that would apply in a similar proceeding, if this were an all-Illinois proceeding under the Parentage Act. But, again, that statute only deals with support. The other confusion, counsel points out that UFSA doesn't provide for addressing parenting time issues. And that is literally correct, but it ignores that there is a complementary statute that does provide a mechanism for addressing all of those issues. And that statute is available to him. So, ultimately, the constitutional challenges are largely informed by these misunderstandings. Counsel did specifically mention Section 318 of UFSA, which is a section that allows the circuit court to ask another state for assistance in obtaining discovery. And the theory is that, well, it says may ask for assistance, so it's only allowing circuit courts to ask for assistance, but not requiring it. And there's no merit to that contention. For one thing, there was no basis here for the circuit court to ask for any discovery assistance from Georgia, given the discovery requests that he filed. And, in any event, there's no constitutional problem with that language. Again, the problem with the document requests and interrogatories were that they were excessive. It's not that he can't receive any discovery at all in child support. So, whether discovery was excessive would be a determination that the Illinois court would make. There would be no reason to get input on that from another state. And the requests to admit were about parenting issues. But the parenting issues weren't properly before the Illinois court, so there would be no point in asking for discovery assistance on a matter that wasn't before the court. Eddie did not even ask the circuit court to undertake this procedure, but apart from all of that, there's no constitutional flaw in Section 318 on the grounds that it allows courts to decide when discovery assistance from another state would be warranted. Courts routinely exercise jurisdiction over discovery, and they exercise judgment about managing the proceedings that are before them, and that doesn't point to a constitutional problem. So, I think I've expressed the position that the hierarchy of decision-making here would be there is no jurisdiction. If the court determined there was, the case should be decided on nonconstitutional grounds and ultimately the constitutional challenges lack merit. But if there are any questions from the panel, I'd be happy to address that. Any questions? I don't have any. Thank you. Thank you.  Yes, ma'am. First, to clarify something, the court order, which is in our exhibit list under A8, does not set forth any reasons why the discovery was denied. It just says the court grants respondents, I'm sorry, the court having heard argument and the respondent having filed a response, et cetera, et cetera, the court grants the petitioner's motion. It didn't say the discovery was improper. It didn't say anything to that issue. So, the record, which we all deal with, does not talk about the things counsel talked about. I wanted to clarify that. Secondly, if a court denies you the right to discovery and you can't proceed any further in your case, that's a final order because it becomes a order of the court. Or it becomes, shall I say, the rule of the court becomes the law of the court. And we cited a case on that also, judges, or justices, which basically says that whatever the court decides in a case, for the rest of the case now becomes the law of the case. So, if I can't have any discovery, I can't challenge anything by virtue of the discovery, so I can't produce a defense. That goes all the way through the case. And so we're right back here again. The point I'm trying to make, justices, is that this case, and I respectfully understand your position, Justice, that it could affect a number of other states. But as far as our state is concerned, if we look at the Supreme Court ruling in Bruin, it's quite clear. Bruin said you can't do this because it gives the court the discretion to deny the rights. It has the right to deny your constitutional right. In this case, it says they may allow you to have your discovery and may send it out to the other state. But it doesn't say under what circumstances they may do it. And the court never challenged anything we put down in our discovery. It just blatantly cut it off and said no. So the point I'm making is, if you look at Bruin and you look at our case here, you see it's the same case, basically. The same idea of a law that there is no guideline in it as to what will dictate to the tribunal when you will allow discovery and when you won't allow discovery. Or what will you allow the defendant has to do to get you to give him discovery. If you can see what I'm saying, if you looked at Bruin, it's a duplicate of what this case is. And the state did not come back and say, well, we have a tradition of denying you your rights to have discovery. How are you going to defend that? Which is what happened in New York. They couldn't defend it. There's no tradition, which is why this case is a duplicate of that. And I admit, Justices, this is a unique case. It's not one that you've ever seen before. And I appreciate the fact you've allowed me to come here and argue it. But it is so blatantly a violation of the constitutional right to due process that it has to be addressed. The law has to be changed. And the only way it can change is if this body comes back and says to the legislature, look, you've got to do something with this. It's unconstitutional. So I guess I'm out of time. Are there any questions for Mr. Morris? No. No, I do. Okay. Thank you, Justices, for your time. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.